**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| KAREN GARDINER, individually and as the personal representative of the Estate of Sean Gardiner, deceased, | Case No.: 2:10-cv-00947-EAS-MRA DISTRICT JUDGE EDMUND A. SARGUS |
| | MAGISTRATE JUDGE MARK R. ABEL |
| Plaintiff, | ORAL ARGUMENT REQUESTED |
| v. | |
| KELOWNA FLIGHTCRAFT LTD., a foreign Corporation, | |
| Defendant. _____ / | |

**DEFENDANT, KELOWNA FLIGHTCRAFT LTD.'S MOTION TO COMPEL PRODUCTION OF SETTLEMENT AGREEMENT AND DISCLOSURE OF THE SETTLEMENT AMOUNT REACHED WITH AIR TAHOMA, INC.**

Defendant, KELOWNA FLIGHTCRAFT LTD. (hereinafter "Kelowna"), by and through its undersigned counsel and pursuant Federal Rule of Civil Procedure 37, Southern District of Ohio Civil Rule 7.2 and 37.2 hereby moves this Court to compel Plaintiff to Produce the Settlement Agreement and disclose the amount she received to settle the case against Air Tahoma, Inc. As grounds for this Motion, Kelowna states as follows:

**I.    PROCEDURAL FACTS**

1.    On January 13, 2011, Kelowna propounded its First Set of Interrogatories and First Request for Production on Plaintiff seeking production of the Settlement Agreement and disclosure of the settlement amount reached with Air Tahoma, Inc. in the Florida Action.[1]

---

[1] Plaintiff sued Defendant and Air Tahoma in Florida Broward County Circuit Court in a similar action for negligence and strict liability styled: *KAREN GARDINER, individually, and as the Personal Representative of the*

1

Copies of Kelowna's discovery requests are attached hereto as composite Exhibit "A."

2. On February 14, 2011, Plaintiff served her objections to Kelowna's discovery requests and refused to produce the documents and information requested on the basis that the materials were privileged and not relevant to the issues in this case. In addition to objecting to Kelowna's discovery requests, Plaintiff also served a privilege log.[2] Plaintiff's discovery responses are attached hereto as composite Exhibit "B."

3. The undersigned conferred with Plaintiff's counsel on several occasions in order to resolve this dispute. The parties are at an impasse on this matter and therefore this Motion is properly before the Court.

## II. BACKGROUND

### A. *The Subject Accident*

At all times material to the present lawsuit and the previous Florida lawsuit, Air Tahoma, Inc. was the owner and operator of the Convair CV-580 (the "Subject Aircraft") that crashed, killing all occupants on board, including the Decedent. Air Tahoma was responsible for all of the maintenance on the Subject Aircraft, which was manufactured in 1956 (an aircraft which utilized cables and pulleys for its flight control systems as opposed to computer controlled hydraulics now found on many modern aircraft). After the accident, the NTSB determined that the cause for the accident was the improper (reverse) rigging of the elevator trim cables by Air Tahoma maintenance personnel, and their subsequent failure to discover the misrigging during required post-maintenance checks. Contributing to the accident was the pilot's inadequate post-maintenance pre-flight check.

---

*Estate of Sean Gardiner, deceased v. KELOWNA FLIGHTCRAFT, LTD, a/k/a KELOWNA FLIGHTCRAFT AIR CHARTER, LTD, INC.*, Case No.: CACE 09-048068 (19) related to the subject accident. Kelowna was dismissed from that action for lack of personal jurisdiction.
[2] As will be discussed in detail, there is no privilege applicable to finalized settlement agreements and settlement amounts.

Case No.: 2:10-cv-00947-EAS-MRA

In the months prior to the accident, Air Tahoma was in complete disarray because no single person consistently held the Director of Maintenance position and the company was also transitioning to a new Chief Inspector. Specifically, the previous Chief Inspector had been fired while he was purportedly in the process of updating the manuals and organizing the paperwork. (leaving the position vacant for approximately twenty days).[3] Moreover, the new Chief Inspector who assumed the position (Eugene Conter)[4] was admittedly "overwhelmed" because the maintenance paperwork was back logged for approximately one year requiring a lot of attention and work to bring Air Tahoma in compliance with Federal Regulations. Consequently, the required maintenance manuals and work package for the Subject Aircraft were disorganized and not up to date.

It is uncontested that after overhauling the elevators, the cables controlling the trim tabs were re-rigged in reverse by Air Tahoma maintenance personnel. Air Tahoma's Director of Maintenance (Walter Raleigh), at the time of the subject accident, testified in the Florida Action that the Air Tahoma employee who rigged the trim tabs admitted to the FAA that he made a mistake. ". . . .[He] made a mistake. He owned up to the mistake. It was a horrible mistake. [One of the decedents] was a very good friend of his. It devastated him." As a result of the accident, the FAA & NTSB issued an Emergency Order of Revocation revoking Air Tahoma's Operating Certificate identifying a plethora of blatant violations by Air Tahoma which were found to be contributing factors of the subject accident. Additionally, the Emergency Order of Revocation does not hold Kelowna liable, in any way, as contributing to the cause of the accident.

---

[3] Air Tahoma's failure to maintain a full-time Chief Inspector and any gap in employing a full-time Director of Maintenance in those critical positions expressly violated Federal Aviation Regulations, 14 C.F.R. §§ 119.65(a)(4) & (5).

[4] Mr. Conter had previously held the position of Chief inspector and then was demoted from the position from June 2006 to July 2007. Shortly after the previous Inspector was fired, Mr. Conter was reinstated as Chief Inspector.

**B.** *Plaintiff Sues Air Tahoma in Florida Circuit Court*

Plaintiff sued Air Tahoma in a Florida state court for negligence, intentional tort and for punitive damages. In the count for an intentional tort, Plaintiff alleged a dangerous process, procedure, instrumentality, and/or condition existed within Air Tahoma's business operation that fell outside the natural hazards of employment in the aviation industry, because Air Tahoma: (1) serviced/repaired/inspected the subject aircraft and conducted its overall operations and practices in a manner in which it knew presented a substantial certainty that the subject aircraft would crash and but consciously disregarded these certain risks; (2) intentionally made false log entries in the maintenance records for the subject aircraft; (3) knowingly failed to staff its maintenance operations with sufficiently qualified personnel; and/or (4) knowingly failed to follow its own manual with respect to inspections by not requiring an inspector to sign off on the maintenance and not auditing the subject aircraft's maintenance records.

Air Tahoma sought to escape liability by moving for summary judgment on the grounds that the Decedent's beneficiary (i.e. Plaintiff) accepted benefits from the Ohio Bureau of Workers' Compensation and therefore Air Tahoma was immune from suit under Ohio's Workers' Compensation Statute.

**C.** *Plaintiff Sues Kelowna in Florida Circuit Court*

Plaintiff also sued Kelowna for negligence and strict liability alleging facts which are similar to the facts Plaintiff alleges in this action. Plaintiff's claims are premised entirely upon Kelowna being a "Type Certificate holder"[5] for Convair aircraft at the time of the Air Tahoma accident. Plaintiff claimed that since Kelowna held the Type Certificate for the subject Convair

---

[5] A Type Certificate is a governing bodies' certification that the manufacture and/or design of an aircraft has satisfied the applicable airworthiness standards and requirements. As will be discussed further, a Type Certificate may be transferred. In this case, the original Type Certificate holder was held by the actual manufacturer, General Dynamics, who transferred the Type Certificate to Tracor who then transferred the type certificate to Kelowna.

aircraft, it was essentially considered a "de facto manufacturer" of the aircraft and purportedly owed duties: (1) to ensure the aircraft's design and maintenance were performed in an airworthy manner and (2) to furnish Air Tahoma with information (e.g. manuals, task cards and instructions for continued airworthiness) for the removal and replacement of products and parts.[6] However, as will be discussed in more detail below, Plaintiff is well aware that the Subject Aircraft and its maintenance manual were actually manufactured by General Dynamics and not by Kelowna. Nonetheless, Plaintiff is attempting to show that certain duties and obligations which applied to the actual aircraft manufacturer (i.e. General Dynamics), are somehow imputed to Kelowna as the type certificate holder.

In her attempt to establish Kelowna's liability, Plaintiff relied heavily on a minor incident (not resulting in death or property damage) which occurred in Hamilton, Ontario on May 14, 1997 (before Kelowna owned the type certificate) where its maintenance personnel accidently reversed the elevator trim cables on a Convair CV-580. The Transport Safety Board of Canada (TSB) investigated the incident and determined that the incident occurred due to a series of maintenance errors. Moreover, at the time of that incident, Tracor was the type certificate holder for the Subject Aircraft. Kelowna operated an aircraft maintenance facility in Hamilton, Ontario. The type certificate was originally held by General Dynamics which built the Subject Aircraft in 1956. In 1995, General Dynamics transferred the type certificate to Tracor Flight Systems which was the certificate holder at the time of the 1997 incident. Kelowna did not acquire the type certificate until November 9, 1998. Importantly, neither the NTSB in this case nor the TSB in 1997 concluded that the type certificate holder was in any way responsible for the reversal of the

---

[6] At the Preliminary Pretrial Conference on January 13, 2011, Plaintiff's counsel informed the Court that Plaintiff will amend her Complaint. Plaintiff requested an extension of time until March 15, 2011 to do so and the Court granted the extension. The Court also extended all related deadlines for Kelowna.

trim tab cables.[7]

### D. *Kelowna is Dismissed from Florida Action and Plaintiff Settles with Air Tahoma*

On the eve of court ordered mediation in the Florida action, the trial court denied Air Tahoma's summary judgment motion regarding workers' compensation immunity and dismissed Kelowna for lack of personal jurisdiction. The order dismissing Kelowna was not yet final, so Kelowna attended the mediation with Plaintiff and Air Tahoma. Pursuant to Florida Statute § 44.102, all court ordered mediation communications must remain confidential and Kelowna is precluded from disclosing any settlement discussions with this Court. However, Plaintiff's posturing both before and after the mediation leads Kelowna to believe that the settlement reached with Air Tahoma was for a very substantial sum. Plaintiff's posturing was further evidenced by her refusal to issue a settlement demand or discuss settlement with Kelowna until after she settled with Air Tahoma (which did not occur until just recently).

### E. **The Settlement Agreement and Settlement Amount are Relevant to the Issues of Damages and Collusion and are Therefore Discoverable.**

    1.    <u>Relevancy to Damages/Set-off Analysis</u>

This Court should compel production of the settlement agreement and disclosure of the settlement amount since they are relevant to the issue of damages in this case. Specifically, if liability is ultimately assessed against Kelowna, Kelowna may be entitled to a set off pursuant to Ohio Rev. Code § 2307.28. In Ohio, "[s]etoff of settlement funds has been recognized as a means to protect against the danger of a double recovery in cases where settlement agreements have been entered into between co-defendants." *Celmer v. Rodgers, D.O.*, 2005 WL 3610479 (Ohio Ct. App. 2005). Moreover, the Northern and Southern Districts of Ohio both hold that settlement agreements and amounts are relevant to the issue of damages, specifically with respect

---

[7] Kelowna notes that since this model line began production in the late 1940s, apparently only two known trim tab reversal incidents have occurred; the 1997 incident and the 2008 incident.

6

to the possibility of a set-off. In *Thomas & Marker Construction Co. v. Wal-Mart Stores, Inc.*, this Court was presented with a Motion to Compel the settlement agreement entered into by the plaintiff and to settling co-defendant. 2008 WL 3200642, *1 (S.D. Ohio 2008). As a basis for compelling production of the settlement agreement, the non-settling defendant claimed that the terms of the agreement were relevant to the issue of damages for purpose of determining the applicability of a set-off. *Id.* at *2. The Court agreed finding that the agreement was relevant to the issue of damages for purposes of a set-off analysis. *Id.* at *3 ("[The settlement agreement] may be relevant to any damages that may ultimately be awarded . . . .").

In *Oberthaler v. Ameristep Corp.*, the Northern District of Ohio was presented with a Motion to Compel disclosure of the settlement amount reached between the plaintiff and the settling co-defendant. 2010 WL 1506908 (N.D. Ohio 2010). During a telephone status conference the non-settling defendant requested disclosure of the settlement amount paid to the plaintiff by the settling defendant. *Id.* The non-settling defendant claimed that the amount of the settlement was pertinent to assessing damages. *Id.* at *1. The Court agreed and compelled disclosure of the settlement amount stating that it:

> is persuaded that the settlement amounts may be relevant to [the non-settling defendant's] claims and defenses. As [the non-settling defendant] notes, the settlement agreements may be relevant as to the issue of damages.
>
> * * *
>
> Moreover, [the plaintiff] seeks damages for his injuries on a theory of joint and several liability. [The non-settling defendant] wants to know the amount of monies recovered by [the plaintiff] from the Settling Defendants for the additional reason of determining whether it is financially justified, on the part of [the non-settling defendant], to continue this litigation. Not only are [the non-settling defendant's] interests at stake in this regard, but so is the interest of this Court in not having to spend time on unnecessary litigation.

*Id.* at *2.

2.  <u>Relevancy to Collusion Among the Settling Parties</u>

Not only is the settlement agreement relevant to the issue of damages, the agreement is also relevant to show whether there is any collusion among the settling parties and to show bias by the settling parties. The non-settling defendant in *Thomas & Marker* also claimed the settlement was relevant to determining collusion between the settling parties which, in turn, is relevant to the credibility of witnesses to be called at trial. *Id.* The defendant asserted that disclosure of the settlement agreement would allow it to consider any hidden motives of the witnesses stemming from the agreement of the settling parties. *Id.* The defendant also asserted that the agreement between the settling parties may also be a *Mary Carter*[8] agreement. *Id.* "A *Mary Carter* agreement is a contract between a plaintiff and at least one defendant allying them against another defendant at trial." *Hodesh v. Korelitz*, 914 N.E.2d 186, 189 (Ohio 2009). In Ohio, "*Mary Carter* agreements are discoverable and admissible." *Thomas & Marker,* 2008 WL 3200642, *2 (citing *Hodesh v. Korelitz,* 2008 WL 1913530, *6 (Ohio Ct. App. 2008), *rev'd on other grounds Hodesh*, 914 N.E.2d at 186). The *Thomas & Marker* Court agreed with the defendant that the settlement agreement should be disclosed due to its relevancy to any damages ultimately awarded as well as determining whether the agreement was, in effect, a *Mary Carter* agreement. *Id.* at *3.

The agreement is also relevant and admissible under the Federal Rules of Evidence in order to show bias or prejudice. *See* Fed. R. Civ. P. 408. Rule 408(b) clearly states that evidence of entry into a settlement agreement is admissible to show bias or prejudice. *See Maybury v. Slaton*, 2010 WL 518040, *1 (S.D. Ohio 2010) (denying Motion in Limine to preclude introduction of settlement agreement to show bias and prejudice).

---

[8] In Ohio, Mary Carter agreements are not favored and must be disclosed to co-defendants. *Hodesh v. Korelitz*, 914 N.E.2d 186, 189 (Ohio 2009).

8

      3.    <u>Relevancy in the Present Action</u>

In the present case, Kelowna is seeking discovery of the settlement agreement and disclosure of the settlement amount for the same reasons set forth in *Oberthaler* and *Thomas & Marker*. Kelowna should be permitted to review the settlement agreement in order to perform a set-off/damages analysis which may facilitate more meaningful settlement discussions with Plaintiff. Furthermore, disclosure of the settlement agreement will allow Kelowna to determine whether a *Mary Carter* agreement exists between Plaintiff and Air Tahoma. During the pendency of this litigation, Kelowna plans to depose witnesses from Air Tahoma (the settling co-defendant). In order to fairly assess the credibility and/or bias of potential Air Tahoma witnesses and prepare for the examination of those witnesses at deposition and/or trial, Kelowna should have knowledge of the terms, conditions and the amount that Air Tahoma paid to settle the case. Lastly, Plaintiff should be compelled to disclose the settlement agreement and amount because it may lead to resolution of this matter and preserve "the interest of this Court in not having to spend time on unnecessary litigation." *Oberthaler*, 2010 WL 1506908, at *2.

**III. KELOWNA IS ENTITLED TO DISCLOSURE OF THE SETTLEMENT AGREEMENT AND SETTLEMENT AMOUNT BECAUSE THEY ARE BOTH DISCOVERABLE UNDER THE FEDERAL RULES OF CIVIL PROCEDURE AND OHIO LAW**

Plaintiff objects to producing the settlement agreement and disclosing the settlement amount reached with Air Tahoma claiming that they are "not reasonably calculated to lead to the discovery of admissible evidence" and that the materials are protected by the Sixth Circuit's "settlement communications privilege." *See* Exhibit "B." As will be demonstrated, Plaintiff's arguments are unpersuasive because: (1) the Federal Rules of Civil Procedure allow for liberal discovery; (2) Ohio Federal Courts hold that settlement agreements and settlement amounts are relevant and therefore discoverable to the issues of damages and collusion; and (3) the settlement

Case No.: 2:10-cv-00947-EAS-MRA

communications privilege is inapplicable to finalized settlement agreements and settlement amounts.

a.  *Kelowna is Entitled to Disclosure of the Settlement Agreement and to the Settlement Amount Pursuant to Liberal Discovery Under the Federal Rules of Civil Procedure*

Federal Rule of Civil Procedure 26(b)(1) states in relevant part that: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense [and r]elevant information need not be admissible if reasonably calculated to lead to the discovery of admissible evidence." On its face, this Rule seems narrow and strict in its application. However, in *Evenflo Co. Inc. v. Hantec Agents Ltd.* this Court stated that:

> The Federal Rules of Civil Procedure provide for broad, liberal discovery of any information which may be relevant to a suit and are construed to obtain the 'just, speedy, and inexpensive determination of every action.' Discovery may be obtained 'regarding any matter, not privileged, that is relevant to the claim or defense of any party . . .' Further, relevant information need not be admissible so long as it 'appears reasonably calculated to lead to the discovery of admissible evidence. Also, relevance should be broadly construed when applying the discovery rules.

2006 WL 1580221, *1-2 (S.D. Ohio 2006) (internal citations omitted). Moreover, in 1978 the U.S. Supreme Court in *Oppenheimer Fund, Inc. v. Sanders* specifically addressed the definition of "relevance" in the context of discovery pursuant to Rule 26(b)(1). The Supreme Court stated that:

> The key phrase in [Rule 26(b)(1)] – "relevant to the subject matter involved in the pending action" – has been construed broadly to encompass **any matter** that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case. Consistently with the notice-pleading system established by the Rule, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. **Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.**

437 U.S. 340, 351 (1978) (emphasis added & internal citations omitted); *see also Marsico v. Sears Holding Corp.*, 370 F. App'x 658 (6th Cir. 2010) (quoting *Oppenheimer*). The Court also

10

Case: 2:10-cv-00947-EAS-MRA Doc #: 42 Filed: 03/10/11 Page: 11 of 16 PAGEID #: 338
Case No.: 2:10-cv-00947-EAS-MRA

indicated, as a side note, that "the court should and ordinarily does interpret 'relevant' very broadly to mean [a] matter that is relevant to **anything** that is or may become an issue in the litigation." *Id.* n.12 (quoting 4 J. Moore, Federal Practice ¶ 26.56[1], p. 26-131 n.34 (2d ed. 1976) (emphasis added).

Moreover, the Sixth Circuit emphasized the importance of liberal discovery in *Brown Badgett, Inc. v. Jennings* and stated that:

> [t]he federal rules regulating discovery are directed toward the same goal. Together with other pretrial procedures, these rules "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." The purposes underlying the federal rules are to avoid surprise and the possible miscarriage of justice and to eliminate the "sporting theory of justice."

842 F.2d 899, 902 (6th Cir. 1988) (internal citations omitted). Based solely on the long standing principles of liberal discovery established by the U.S. Supreme Court, the Sixth Circuit Court of Appeals and the Southern District of Ohio, Plaintiff should be compelled to produce the final settlement agreement and to disclose the settlement amount to Kelowna.

b.  *The Settlement Communications Privilege Plaintiff Asserts is Inapplicable to Finalized Settlement Agreements and Settlement Amounts.*

Plaintiff also objects to producing the settlement agreement and disclosing the settlement amount based upon the "settlement privilege." Kelowna does not dispute that the Sixth Circuit and the Ohio Courts have adopted a "settlement privilege" as set forth in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003). However, the *Goodyear* settlement privilege does not apply to finalized settlement agreements and settlement amounts like the discovery sought by Kelowna in the present case.

In *Goodyear*, the issue before the court was "whether communications made in furtherance of settlement negotiations are *discoverable* by litigants in another action. . . ." 332

F.3d at 979 (emphasis in original). The Court went on to discuss the public policy in favor of maintaining secrecy of settlement communications to promote the resolution/settlement of cases. *See id.* at 980. Additionally, the Court also discussed the possible negative effects if parties were permitted discovery of communications in any form by third parties. However, the Court focused only on settlement negotiations and recognized a difference between settlement ***communications*** and the settlement ***agreement*** itself. *See id.* at 981; *see also QSI-Fosoria, D.C., LLC v. BACM 2001-1 Cent. Park W., LLC*, 2006 WL 2010791, *2 (N.D. Ohio 2006) ("However, [the settlement communications] privilege does not extend beyond actual negotiations to the terms of the final agreement."). Kelowna is not seeking disclosure of settlement communications. Kelowna has asked Plaintiff to produce the final settlement agreement and to disclose the final settlement amount. Therefore, the *Goodyear* settlement communications privilege is inapplicable to the discovery sought in the present situation.

c. ***Kelowna is Entitled to Discovery of the Settlement Agreement and Settlement Amount Despite the Plaintiff's and Air Tahoma's Agreement to Keep the Settlement Agreement and Amount Confidential.***

Plaintiff has also objected to producing of the settlement agreement and disclosing the settlement amount due to the existence of a confidentiality provision in the settlement agreement. *See* Exhibit "B." Plaintiff's objection lacks merit because Ohio courts clearly hold that the fact that the parties have agreed to keep the terms and conditions of a settlement agreement confidential does not allow a party to withhold the information from discovery.

> [Settlement] agreements are not protected from discovery simply because they have been denominated "confidential" by the parties. "[A] general concern for protecting confidential information does not equate to privilege [. . .]. [I]n the context of settlement agreements the mere fact that settling parties agree to maintain the confidentiality of their agreement does not serve to shield the information from discovery. Simply put, litigants may not shield otherwise discoverable information from disclosure to others merely by agreeing to maintain its confidentiality."

12

*Oberthaler*, 2010 WL 1506908, at *1 (quoting *Adams v. Cooper Indus.*, 2007 WL 805459, *2 (E.D.Ky. 2007)); *see also Thomas & Marker*, 2008 WL 3200642 (compelling disclosure of settlement agreement deemed confidential by the settling parties); *QSI-Fostoria*, 2006 WL 2010791 (compelling disclosure of settlement agreement containing confidentiality provision). In *Oberthaler*, the settling plaintiff declined to disclose the amount of the settlement based specifically on the confidentiality provision of the agreement. 2010 WL 1506908, at *1. The Court held that the confidentiality provision was immaterial where the agreement is relevant to the issues in the case and thus compelled disclosure. *Id.* at *2. As a result, the existence of confidentiality provision in Plaintiff's settlement agreement with Air Tahoma does not shield it from discovery and disclosure to Kelowna.

### d. *Plaintiff is Not Entitled to an In Camera Inspection of the Documents by the Court Because the Settlement Agreement and Settlement Amount are Not Privileged.*

Finally, Plaintiff has suggested to Kelowna that this Court perform an *in camera* review of the materials requested so that the Court may assess the relevancy and the possible collusion (i.e. the parties' possible entry into a *Mary Carter* agreement). Plaintiff's suggestion is misguided. Typically, a court will conduct an *in camera* review of documents or materials when a privilege has been asserted. *See Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 405 (1976) (holding that an in camera review is appropriate tool for striking balance between privilege and need for documents). As discussed in detail above, no privilege exists with respect to a finalized settlement agreement and/or the settlement amount contained therein. *See generally Goodyear*, 332 F.3d at 976; *see also* discussion *supra* III. It seems apparent then that Plaintiff would like this Court to review the materials in order to assess their relevancy. However, the Southern District of Ohio expressly holds that it will not engage in an *in camera*

13

review of materials to determine their relevancy for purposes of discovery. *See United States v. The Kroger Co.*, 566 F. Supp. 1432, 1434 (S.D. Ohio 1983) ("This Court declines to take on the additional burden of inspecting documents in camera in order to determine actual relevancy, as opposed to potential relevancy."). Therefore, this Court should decline to conduct an *in camera* review of the settlement agreement requested by Kelowna.

## VI. KELOWNA IS ENTITLED TO REASONABLE FEES AND EXPENSES

Pursuant to Federal Rule of Civil Procedure 37(a)(5)(A) Kelowna is entitled to fees and costs incurred in preparing this Motion to Compel. The aforementioned discussion clearly establishes that Kelowna is entitled to disclosure of the settlement agreement and settlement amount since they are both relevant and probative to the issues in this case.

## VII. GROUNDS FOR ORAL ARGUMENT EXIST

Pursuant to S.D. Ohio Civ. R. 7.2, Defendants respectfully request that oral argument of this matter be permitted. In addition to the case law cited in the parties memoranda, this Court will likely formulate questions which must be answered in order for the Court to make an informed ruling.

## VIII. STATEMENT OF CONSULTATION AMONG COUNSEL

Pursuant to S.D. Ohio Civ. R. 37.1, Defendants have conferred with counsel for Plaintiff and is authorized to represent that Plaintiff opposes granting this Motion.

**WHEREFORE,** Defendant, KELOWNA FLIGHTCRAFT LTD. respectfully requests that this Court enter an Order compelling the Plaintiff to produce the settlement agreement and to disclose the settlement amount paid by Air Tahoma, Inc., award it fees and costs for preparing this Motion and grant such other and further relief as appears lawful, equitable and just.

Respectfully submitted this 10th day of March, 2011.

By: /s/ *David P. Herman*
**DAVID P. HERMAN** (*Pro Hac*)
Fla. Bar No. 841031
**MICHAEL G. SHANNON** (*Pro Hac*)
Fla. Bar No. 739839

**MURRAY, MORIN & HERMAN, P.A.**
Attorneys for Defendant,
KELOWNA FLIGHTCRAFT LTD.
255 Alhambra Circle, Suite 750
Coral Gables, FL  33134
Tel: (305) 441-1180
Fax: (305) 441-1801

**ROETZEL & ANDRESS, L.P.A.**
**BASIL J. MUSNUFF** (Trial Attorney)
Ohio Bar No.: 0042711
Attorneys for Defendant,
KELOWNA FLIGHTCRAFT LTD.
222 South Main Street
Akron, Ohio 44308
Tel:  (330) 849-6633
Fax: (330) 376-4577

**CERTIFICATE OF SERVICE**

I HEREBY CERIFY that on March 10, 2011, I served the foregoing document with the Clerk of the Court using CM/ECF.  I also certify on this date the foregoing document is being served on all parties identified below in the manner specified either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically any Notices of Electronic Filing.

By: /s/ *David P. Herman*
**DAVID P. HERMAN**

15

Case No.: 2:10-cv-00947-EAS-MRA

## SERVICE LIST

Edward R. Forman, Esq.
John S. Marshall, Esq.
Marshall and Morrow, LLC
111 W. Rich Street
Suite 430
Columbus, OH  43215-5296

Stephen F. Rosenthal, Esq.
Steven C. Marks, Esq.
Podhurst, Orseck, P.A.
25 W. Flagler Street
Suite 800
Miami, FL  33130