UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KAREN GARDINER, individually and as the personal representative of the Estate of Sean Gardiner, deceased, | Case No.: 2:10-cv-00947-EAS-MRA<br>DISTRICT JUDGE EDMUND A. SARGUS<br><br>MAGISTRATE JUDGE MARK R. ABEL |
| Plaintiff, | |
| v. | |
| KELOWNA FLIGHTCRAFT LTD., a foreign Corporation, | |
| Defendant.<br>_____ / | |

**DEFENDANT, KELOWNA FLIGHTCRAFT LTD.'S REPLY TO PLAINTIFF'S RESPONSE TO THE MOTION TO COMPEL PRODUCTION OF SETTLEMENT AGREEMENT AND TO DISCLOSURE OF THE SETTLEMENT AMOUNT REACHED WITH AIR TAHOMA, INC.**

Defendant, KELOWNA FLIGHTCRAFT LTD. (hereinafter "Kelowna"), by and through its undersigned counsel and pursuant Federal Rule of Civil Procedure 37, Southern District of Ohio Civil Rule 7.2 and 37.2, hereby files this Reply in Support of its Motion to Compel Plaintiff to Produce the Settlement Agreement and to disclose the amount she received to settle the case against Air Tahoma, Inc.

**I.      RECENT FACTS & BACKGROUND UPDATE**

As this Court is aware, Kelowna recently entered into a Confidentiality Stipulation with counsel for Plaintiff, Bastos and Air Tahoma in the companion case before this Court[1] in which

---

[1] The companion case is styled *DOMINIQUE BASTOS, as the personal representative of the Estate of URS ANDEREGG, deceased v. KELOWNA FLIGHTCRAFT LTD. and KELOWNA FLIGHTCRAFT R & D LTD.*, Case No.: 2:10-cv-00946-EAS-MRA.

they agreed to produce the Settlement Agreement and disclose the settlement amount reached between Plaintiff, Bastos and Air Tahoma, Inc. from the Florida Action,[2] which was filed with the Court on April 4, 2011. Thereafter, the Court considered the Stipulation and entered a Protective Order on April 8, 2011, permitting the confidential disclosure of the Settlement Agreement and settlement amount in the Bastos case to Kelowna.

In this case, Plaintiff is wasting not only Kelowna's time, but more importantly the Court's time, by refusing to produce discovery which, under Ohio law, clearly must be produced. As is explained in Kelowna's Motion to Compel and in this Reply, Ohio law favors producing the Settlement Agreement and disclosing the settlement amount to Kelowna at this time because it is clearly relevant to the issues in this case. Plaintiff complains that Kelowna desires to know the settlement amount for tactical settlement reasons, rather than the reasons set forth in its Motion, and that Kelowna will not agree to participate in early informal mediation until after Plaintiff responds to a forthcoming summary judgment motion. Plaintiff's complaints are not valid bases to deny Kelowna the discovery because (1) the discovery is permitted under Ohio law, and (2) an informal early mediation is not possible at this time primarily because of Plaintiff's extremely large settlement demand.

As is clearly demonstrated by Plaintiff, Bastos' actions, disclosure of the Settlement Agreement and settlement amount is not prejudicial so long as the parties enter into a Confidentiality Stipulation and a Protective Order. Air Tahoma and Kelowna have no problem with such a course of action. Plaintiff is the sole holdout, presumably because she does not want

---

[2] Plaintiff, Bastos sued Air Tahoma in Florida Broward County Circuit Court in a similar action for negligence, vicarious liability for the acts and omission of its pilots and gross negligence asserting entitlement to punitive damages styled *DOMINIQUE BASTOS, as Personal Representative of the Estate of URS ANDEREGG, deceased v. KELOWNA FLIGHTCRAFT, LTD, a/k/a KELOWNA FLIGHTCRAFT AIR CHARTER, LTD, INC.*, Case No.: CACE 09-027621 (04) related to the subject accident. Kelowna was dismissed from that action for lack of personal jurisdiction.

to disclose the large amount of money she received from the obviously culpable tortfeasor. Plaintiff, Gardiner's actions demonstrate her clear intent to force Kelowna to unnecessarily expend time and costs to obtain relevant and discoverable information necessary to defend against her extremely tenuous claims. As a result, this Court should compel Plaintiff to produce the Settlement Agreement and to disclose the settlement amount entered into with Air Tahoma, Inc. pursuant to a non-prejudicial Confidentiality Stipulation and Protective Order similar to the one entered in the Bastos case.

**II. THE SETTLEMENT AGREEMENT AND SETTLEMENT AMOUNT ARE RELEVANT TO DAMAGES AND COLLUSION**

Plaintiff's response opposing Kelowna's motion to compel does not cite to any Ohio case law demonstrating that the Settlement Agreement and settlement amount are irrelevant to damages in the present case. Plaintiff only asserts that the timing of the production somehow makes the Settlement Agreement and settlement amount irrelevant. To support her claim, Plaintiff does not cite to any Ohio authority, but instead relies upon two cases from a jurisdiction outside of Ohio and the Sixth Circuit. As previously discussed in Kelowna's Motion and as reiterated below, the Ohio federal courts hold that settlement agreements and settlement amounts are relevant to the issue of damages and collusion (e.g., set-off, Mary Carter Agreements, bias and prejudice). Moreover, in response to Kelowna's assertion that the Settlement Agreement's cooperation clause may give rise to collusion among the settling parties, Plaintiff provides no argument and/or case law opposing Kelowna's argument but instead, simply states that she is "hamstrung" by the confidentiality provision and begs for an in camera review by this Court. As previously discussed in Kelowna's motion and reiterated below, Plaintiff cannot rely on the confidentiality provision to withhold production of the agreement.

3

    **a.**    **The Settlement Amount is Relevant to Damages for Purposes of a Set-off Analysis**

Plaintiff argues that the Settlement Agreement and the settlement amount are only relevant to a set-off in the event Plaintiff obtains a jury verdict against Kelowna. While it may be true that the actual set-off calculation is conducted following a finding of liability, the case law clearly shows that the Ohio federal courts recognize the importance of production of a settlement agreement and the settlement amount long **before** such a determination is made. Plaintiff improperly bootstraps the relevance issue to the time for making the calculation, a concept that is not recognized by any Ohio court. By doing so, Plaintiff ignores and desperately attempts to distinguish the Ohio cases directly on point that require production of the settlement agreement **before** a finding of liability is determined.

Plaintiff contends that her settlement with Air Tahoma is not relevant until the finding of liability against Kelowna at trial and that settlement agreements are only discoverable after a finding of such liability. Plaintiff's contention is misguided and not supported by Ohio federal case law. As Kelowna made clear in its Motion to Compel, the Ohio Federal Courts have compelled production of settlement agreements and settlement amounts (as being relevant to, among other issues, damages) well **before** a trial and a finding of liability. *See Oberthaler v. Ameristep Corp.*, No. 08-cv-1613, 2010 WL 1506908 (N.D. Ohio Apr. 13, 2010) (compelling discovery of settlement agreement and settlement amount **during the discovery phase of litigation**) (emphasis added); *Thomas & Marker v. Walmart*, 3:06-cv-406, 2008 WL 3200642, *1 (S.D. Ohio Aug. 6, 2008) (compelling discovery of settlement agreement **sought by defendant's first set of interrogatories and first request for production**) (emphasis added); *QSI-Fostoria, D.C., LLC v. BACM 2001-1 Cent. Park W., LLC*, No. 02-cv-07466, 2006 WL 2010791 (N.D. Ohio July 17, 2006) (compelling discovery of settlement agreement and

settlement amount **sought by interrogatories and requests for production**) (emphasis added).

To support her argument, Plaintiff only cites two inapplicable cases from a jurisdiction outside of Ohio and the Sixth Circuit. *See* Pl.'s Resp. pp. 9 (citing *ABF Capital Mgmt. v. Askin Capital*, No. 95 Civ. 8905(RWS), 2000 WL 191698, *3 (S.D.N.Y. Feb. 10, 2000); *Bottaro v. Hatton Assoc.*, 96 F.R.D. 158, 160 (E.D.N.Y. 1982)). The cases Plaintiff cites are from a completely separate circuit, are in contravention of Ohio precedent and as a result are not even persuasive authority to this Court. *See, e.g., Hitachi Med. Sys. Am., Inc. v. Horizon Med. Group*, No. 5:07-cv-02035, 2008 WL 5723531 (N.D. Ohio Aug. 29, 2008) (finding district court case from outside the Sixth Circuit unpersuasive where similar authority does not exist within the jurisdiction). Moreover, Plaintiff's reference to case law from jurisdictions outside of the Sixth Circuit contravenes the Southern District of Ohio Civil Rules. *See* S.D. Ohio Civ. R. 7.2 ("In citing authorities, the Court prefers that counsel rely upon cases decided by the Supreme Court of the United States, the United States Court of Appeals for the Sixth Circuit . . ., the Supreme Court of Ohio, and this Court.").

Next, Plaintiff argues that the relevancy of the Settlement Agreement and settlement amount is "contingent" upon a finding of liability against Air Tahoma. *See* Pl.'s Resp. pp. 11. Specifically, Plaintiff contends that Kelowna will have to prove that Air Tahoma was a proximate cause of the subject accident resulting in Sean Gardiner's death before a damages analysis can be conducted. *See* Pl.'s Resp. pp. 8. However, none of the cases cited by Plaintiff apply this concept to the relevance and discoverability of a settlement agreement and settlement amount in the preliminary phase of litigation similar to the present case. *See* Pl.'s Resp. pp. 11; *Fidelholz v. Peller*, 690 N.E.2d 502 (Ohio 1998) (addressing the application of the previous Ohio set-off statute in the context of a motion for judgment notwithstanding the verdict); *In re*

5

*Miamisburg Train Derailment Litig.*, 725 N.E.2d 738 (Ohio Ct. App. 1999) (addressing whether, on summary judgment, a settlement agreement established non-liability of settling defendants); *Nolan v. Conseco Health Ins. Co.*, 2008 WL 2609659 (Ohio Ct. App. 2008) (addressing a post-trial motion to adjudicate liability and for application of set-off from previous settlement). At this stage of the case, Kelowna has not even answered the Complaint and asserted its defenses (including apportionment of liability to Air Tahoma) in large part because Plaintiff has not plead cognizable claims against Kelowna. Again, Plaintiff's <u>timing</u> argument does not render the document non-discoverable. Plaintiff simply ignores the elephant in the room which is that: **it is undisputed that Air Tahoma personnel reversed the trim tab cables that caused the subject Convair aircraft to crash.** *See* Pl.'s First Am. Compl. ¶ 24, 26. There is no question that there will be liability (if not total liability) apportioned to Air Tahoma should this case ever go to trial. Therefore, there are various liability contingencies which may occur and for Kelowna to properly analyze potential damages exposure, Plaintiff should disclose the Settlement Agreement and amount to Kelowna.

Despite Plaintiff's unsupported attempt to use the timing of a potential set-off to bar relevancy, the Ohio federal courts still hold settlement amounts should be produced even where the settlement amount **<u>may be relevant</u>** to damages **<u>prior to</u>** a trial or any other determination of liability. Most recently, the Northern District of Ohio was "persuaded that the settlement amounts **<u>may be relevant</u>** to the [non-settling defendant's] claims and defenses." *Oberhaler*, 2010 WL 1506908, at *2 (emphasis added). The *Oberthaler* Court also found that compelling discovery of the potentially relevant settlement amount was directly related to the non-settling defendant's interest as well as the "interest[s] of this Court in not having to spend time on unnecessary litigation." *Id.* Furthermore, the Southern District of Ohio has held that a

6

settlement agreement "**may be relevant** to any damages that **may** ultimately be awarded. . . ." *Thomas & Marker*, 2008 WL 3200642, at *3 (emphasis added). Therefore, Plaintiff's claim that the Settlement Agreement and amount are irrelevant to damages is unpersuasive and the Court should compel production of same to Kelowna.

      b.      **The Settlement Agreement is Relevant to Determining Collusion and/or the Existence of a Mary Carter Agreement**

As discussed in Kelowna's Motion to Compel, the Ohio federal courts hold that a settlement agreement is relevant to determine whether it is, in effect, a Mary Carter Agreement, which would allow Kelowna to conduct discovery regarding the issue of bias and/or prejudice. *See Thomas & Marker*, 2008 WL 3200642, at *3. Pursuant to Federal Rule of Evidence 408(b), entry into a settlement agreement is clearly admissible to show bias or prejudice. *See Maybury v. Slaton*, 2010 WL 518040, *1 (S.D. Ohio Feb. 2, 2010) (denying Motion in Limine to preclude introduction of settlement agreement to show bias and prejudice). Therefore, Kelowna requires disclosure of the Settlement Agreement in order to adequately prepare for examination of witnesses at deposition and at trial on the issue of bias and prejudice.

Plaintiff admits that Kelowna's additional reasons for compelling production (i.e., collusion, witness bias and a Mary Carter Agreement) are valid. *See* Pl.'s Resp. pp. 12, § C ("Plaintiff will acknowledge that the various other bases that Kelowna lists as potential grounds for the relevance of the settlement agreement – collusion, witness bias, a Mary Carter Agreement – would be valid reasons to require production of the document. . . ."). Furthermore, one of the cases cited by Plaintiff held that a settlement agreement was relevant and discoverable to determine bias and prejudice of the settling parties. *See Goodyear Tire & Rubber Co. v. Dow Deutschland GMBH & Co. OHG*, No. 5:08-cv-1118, 2009 WL 3614959, *2 (N.D. Ohio Oct. 28, 2009) (holding cooperation provision of a settlement agreement relevant and discoverable to

7

determine bias and credibility). Plaintiff asks this Court to simply take her word that no such agreement exists as a basis to preclude Kelowna's discovery of the agreement and that Kelowna's only basis is speculation. *See* Pl.'s Resp. pp. 12, § C. Without Plaintiff's disclosure of the Settlement Agreement, Kelowna can do nothing more than speculate and will certainly not make false accusations against Plaintiff as a means to compel this discovery.

Plaintiff asserts that this Court, without any input from Kelowna, should unilaterally determine whether a Mary Carter Agreement exists in the Settlement Agreement. The proper method would be to disclose the agreement to Kelowna so that it can make a good faith assessment of whether it is a Mary Carter Agreement and, if necessary, allow Kelowna to conduct discovery and depositions of the Air Tahoma representatives. Plaintiff instead is asking this Court to review the Settlement Agreement and to determine whether a Mary Carter Agreement exists, without affording Kelowna an opportunity to participate in the process. Plaintiff's desire to shield from discovery the amount that she settled with Air Tahoma is not a sufficient basis to deny Kelowna due process to achieve that result.

c. **The Confidentiality Provision of the Settlement Agreement is Not a Legitimate Basis to Withhold the Settlement Agreement and the Settlement Amount from Discovery**

Plaintiff provides no legitimate legal basis to support her argument that the confidentiality provision in the Settlement Agreement prevents its disclosure. The reality is that Plaintiff is "hamstrung" in making such an argument because the law holds that settlement agreements cannot be withheld due to the settling parties' confidentiality provision. The Ohio federal courts clearly hold that the fact that the parties have agreed to keep the terms and conditions of a settlement agreement confidential does not allow a party to withhold the information from discovery.

> [Settlement] agreements are not protected from discovery simply because they have been denominated "confidential" by the parties. "[A] general concern for protecting confidential information does not equate to privilege [. . .]. [I]n the context of settlement agreements the mere fact that settling parties agree to maintain the confidentiality of their agreement does not serve to shield the information from discovery. Simply put, litigants may not shield otherwise discoverable information from disclosure to others merely by agreeing to maintain its confidentiality."

*Oberthaler*, 2010 WL 1506908, at *1 (quoting *Adams v. Cooper Indus.*, 2007 WL 805459, *2 (E.D.Ky. 2007)); *see also Thomas & Marker*, 2008 WL 3200642 (compelling disclosure of settlement agreement deemed confidential by the settling parties); *QSI-Fostoria*, 2006 WL 2010791 (compelling disclosure of settlement agreement containing confidentiality provision). In *Oberthaler*, the settling plaintiff declined to disclose the amount of the settlement based specifically on the confidentiality provision of the agreement. 2010 WL 1506908, at *1. The Court held that the confidentiality provision was immaterial where the agreement is relevant to the issues in the case and thus compelled disclosure. *Id.* at *2. As a result, the existence of a confidentiality provision in Plaintiff's settlement agreement with Air Tahoma does not shield it from discovery and disclosure to Kelowna. Moreover, even with the existence of the confidentiality provision, Plaintiff would not be prejudiced by disclosure of the settlement agreement and amount because Kelowna and Air Tahoma will enter into a Confidentiality Stipulation as they did with Plaintiff, Bastos in the companion case, that can become part of a protective order to be entered by this Court.

### III. IN CAMERA INPECTION IS INAPPROPRIATE BECAUSE THE CONTENTS OF THE AGREEMENT ARE RELEVANT AND UNPRIVILEGED AND THEREFORE DISCOVERABLE

Plaintiff's attempt to persuade this Court to conduct an in camera inspection of the Settlement Agreement mis-construes the true purpose of such an inspection. Plaintiff improperly asserted in their response that Kelowna only cites to one inapplicable case to preclude an in

9

camera inspection. However, Kelowna, in fact, referred to the U.S. Supreme Court's decision in *Kerr v. U.S. District Court for Northern District of California*, 426 U.S. 394, 405 (1976) which held that an in camera inspection is an appropriate tool to determine whether to compel discovery when a privilege is asserted. As Kelowna discussed at length in its motion, the "settlement communications privilege" asserted by Plaintiff does not apply to the settlement agreement itself and the existence of the confidentiality provision is not sufficient to shield the agreement from discovery. *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003); *see also QSI-Fostoria, D.C., L.L.C. v. BACM 2001-1 Cent. Park W., L.L.C.*, No. 02-cv-07466, 2006 WL 2010791, *2 (N.D. Ohio July 17, 2006) (holding that the settlement communications privilege "does not extend beyond actual negotiations to the terms of the final agreement.").

Plaintiff improperly attempts to mold the rationale supporting the *Goodyear* "settlement communications privilege" (applicable only to settlement communications) to show that "[t]he amount paid in a settlement agreement is a notoriously unreliable measure of a plaintiff's damages." *See* Pl.'s Resp. pp. 13 (quoting *The Scotts Co. LLC v. Lib. Mut. Ins. Co.*, No. 2:06-cv-899, 2007 WL 1723506, *5 (S.D. Ohio June 11, 2007)). However, Plaintiff fails to point out that in *Scotts* the settlement agreement had already been produced and the court was confronted with discovery of settlement **communications** and material "relating to" settlements and not the discovery of a finalized settlement agreement and settlement amount. *The Scotts Co.*, 2007 WL 1723506, at *3 ("As previously noted, plaintiff has already produced to defendant [the settlement agreements]."). Therefore, Plaintiff's representation is misguided and inapplicable to the present case.

Moreover, Plaintiff fails to recognize that the Southern District of Ohio Court refrains from engaging in an in camera review of settlement agreements for determining relevance where no privilege is asserted. *See Thomas & Marker*, 2008 WL 3200642, at *3 ("[R]egarding an in camera inspection [of the settlement agreement], absent assertion of some legal privilege, which is not the case here, this Court declines to become involved in this stage of the proceedings."). Instead, Plaintiff refers to cases which are highly distinguishable. First, Plaintiff cites to *United States ex rel. Howard v. Lockheed Martin Corp.*, No. 1:99-cv-285, 2010 WL 5173216 (S.D. Ohio Dec. 14, 2010) in support of an in camera inspection. In that case, there was a dispute between the parties over manufacturing costs for labor. 2010 WL 5173216, at *1. A letter from the defendant's Director of Accounting to a Government Contracting Officer referenced a settlement agreement which arose out of nondisclosures of cost or pricing data relating to manufacturing costs for labor. *Id.* Evidently, the letter discussed the settlement agreement in that a cost recording system would be implemented to "alleviate the conditions that gave rise to the allegations that are the subject of the Settlement Agreement." *Id.* At a discovery conference, uncertainty arose as to which government program the settlement agreement applied. The purpose of the court's in camera inspection (**to which the parties consented**) was to determine whether the agreement applied to the government program at issue in that particular case, thereby making it relevant.

The other case Plaintiff relies upon is *Dow Deutschland*, involving a conspiracy to sell synthetic rubber to Goodyear at an inflated price. The deposition of a former employee of the settling defendants was scheduled to take place. Specifically, it is alleged that the former employee had attended meetings, with the remaining defendants, where the alleged conspiracy occurred. *Dow Deutschland*, 2009 WL 3614959, at *1-2. As a result, the defendants sought to

11

compel production of the settlement agreement because the cooperation was extensive and arose from the settlement agreement, making it discoverable. *Id.* The court found the cooperation provision relevant and discoverable to establish bias and credibility of the settling defendant's former employee and compelled production of same. *Id.*

Plaintiff's cases allowed in camera inspections to determine relevance, but specific to the issues in those unique situations. In *United States ex rel. Howard,* the court conducted an in camera inspection due to the uncertainty of whether the settlement agreement even applied to the government contract before the court and not to issues of damages and/or collusion. In *Dow Deutschland*, although the court conducted an in camera inspection of the settlement agreement, the purpose of that inspection was to determine if a cooperation clause existed for purposes of discovery related to bias and reliability of testimony of a conspiring former employee of a settling defendant. In the present case, the issues of damages and collusion (e.g., a Mary Carter Agreement) have been held by the Ohio federal courts to be relevant in similar situations and have compelled production of the settlement agreements and settlement amounts without the need for an in camera inspection. *See Oberthaler*, 2010 WL 1506908, at *2; *Thomas & Marker*, 2008 WL 3200642, at *3. Moreover, even the *Dow Deutschland* case, relied upon by Plaintiff, held the cooperation provision of a settlement agreement relevant and discoverable to determine bias and credibility. 2009 WL 3614959, at *2. Kelowna specifically seeks discovery of the Settlement Agreement for its relevance to collusion existing between the Plaintiff and Air Tahoma and the settlement amount for its relevance to damages (i.e., set-off). Since Ohio case law holds that the Settlement Agreement and settlement amount are relevant in this case, they are discoverable and Plaintiff should be compelled to produce them to Kelowna.

Case No.: 2:10-cv-00947-EAS-MRA

## KELOWNA IS ENTITLED TO REASONABLE FEES AND EXPENSES

Pursuant to Federal Rule of Civil Procedure 37(a)(5)(A) Kelowna is entitled to fees and costs incurred in preparing the Motion to Compel and this Reply. The aforementioned discussion clearly establishes that Kelowna is entitled to disclosure of the Settlement Agreement and settlement amount since they are both relevant and probative to the issues in this case.

Respectfully submitted this 13th day of April, 2011.

By: /s/ *David P. Herman*
**DAVID P. HERMAN** (*Pro Hac*)
Fla. Bar No. 841031
**MICHAEL G. SHANNON** (*Pro Hac*)
Fla. Bar No. 739839

**MURRAY, MORIN & HERMAN, P.A.**
Attorneys for Defendant,
KELOWNA FLIGHTCRAFT LTD.
255 Alhambra Circle, Suite 750
Coral Gables, FL 33134
Tel: (305) 441-1180
Fax: (305) 441-1801

**ROETZEL & ANDRESS, L.P.A.**
**BASIL J. MUSNUFF** (Trial Attorney)
Ohio Bar No.: 0042711
Attorneys for Defendant,
KELOWNA FLIGHTCRAFT LTD.
222 South Main Street
Akron, Ohio 44308
Tel: (330) 849-6633
Fax: (330) 376-4577

Case No.: 2:10-cv-00947-EAS-MRA

## **CERTIFICATE OF SERVICE**

I HEREBY CERIFY that on April 13, 2011, I served the foregoing document with the Clerk of the Court using CM/ECF. I also certify on this date the foregoing document is being served on all parties identified below in the manner specified either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically any Notices of Electronic Filing.

By: /s/ *David P. Herman*
**DAVID P. HERMAN**

## **SERVICE LIST**

| | |
|---|---|
| Edward R. Forman, Esq. | Stephen F. Rosenthal, Esq. |
| John S. Marshall, Esq. | Steven C. Marks, Esq. |
| Marshall and Morrow, LLC | Podhurst, Orseck, P.A. |
| 111 W. Rich Street | 25 W. Flagler Street |
| Suite 430 | Suite 800 |
| Columbus, OH 43215-5296 | Miami, FL 33130 |